COWEN, Circuit Judge,
Dissenting.
It is well established that, without some real evidence of guilt, a defendant’s presence at — and then flight from — the scene of a crime are insufficient to prove his or her guilt beyond a reasonable doubt. Accordingly, it appears that never before in Anglo-American jurisprudence has any court decided that a rational jury could have found a defendant guilty beyond a reasonable doubt based on nothing more than his or her presence and flight — or otherwise concluded that such decision was a reasonable application of clearly established federal law. Because I believe that the Pennsylvania Superior Court’s decision thereby constituted an objectively unreasonable application of Supreme Court precedent, I must respectfully dissent.
Like the majority, I recognize the doubly deferential nature of our standard of review under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), and AEDPA. In Coleman v. Johnson, — U.S. -, 132 S.Ct. 2060, 182 L.Ed.2d 978 (2012) (per curiam), the Supreme Court recently determined that we “failed to afford due respect to the role of the jury and the state courts of Pennsylvania,” id. at 2062. Under Jackson, “the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Jackson, 443 U.S. at 319, 99 S.Ct. 2781 (citing Johnson v. Louisiana, 406 U.S. 356, 362, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972)). This reasonable doubt standard of proof requires the finder of fact “to reach a subjective state of near certitude of the guilt of the accused.” Id. at 315, 99 S.Ct. 2781 (citing In re Winship, 397 U.S. 358, 372, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (Harlan, J., concurring)). The Jackson Court also pointed out that “a properly instructed jury may occasionally convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt.” Id. at 317, 99 S.Ct. 2781. In addition, the writ of habeas corpus — the Great Writ — still “stands as a safeguard against imprisonment of those held in violation of the law.” Harrington v. Richter, — U.S. -, 131 S.Ct. 770, 780, 178 L.Ed.2d 624 (2011). “Judges must be vigilant and independent in reviewing petitions for the writ, a commitment that entails substantial judicial resources.” Id. As the majority recognized, habeas relief under AEDPA still represents “ ‘a guard against extreme malfunctions in the state criminal justice systems.’ ” (Majority Opinion at 845 (quoting Harrington, 131 S.Ct. at 786).)
It is undisputed that a defendant cannot be convicted based solely on evidence of his or her presence at — and then flight from — the scene of the crime, although the Pennsylvania Superior Court did not expressly reference this fundamental principle in its own disposition of Eley’s sufficiency of the evidence challenge. “ ‘[M]ere association with the perpetrators, *863 mere presence at the scene, or mere knowledge of the crime is insufficient’ to establish that a defendant was part of a conspiratorial agreement to commit the crime,” and, accordingly, there must be “some additional proof’ that the defendant intended to commit the crime together with his or her co-conspirators. Commonwealth v. Murphy, 577 Pa. 275, 844 A.2d 1228, 1238 (2004) (quoting Commonwealth v. Lambert, 795 A.2d 1010, 1016 (Pa.Super.Ct.2002)). Likewise, “a defendant cannot be an accomplice simply based on evidence that he knew about the crime or was present at the crime scene.” Id. at 1234 (citing Commonwealth v. Wagaman, 426 Pa.Super. 396, 627 A.2d 735, 740 (1993)); see also, e.g., Commonwealth v. Kimbrough, 872 A.2d 1244, 1255 (Pa.Super.Ct.2005) (noting that it is well settled that mere presence at scene of crime is not enough to establish accomplice liability). “There must be some additional evidence that the defendant intended to aid in the commission of the underlying crime, and then did or attempted to do so.” Murphy, 844 A.2d at 1234 (citing Wagaman, 627 A.2d at 740). Flight may indicate consciousness of guilt and may be considered as evidence, along with other proof, supporting an inference of guilt. See, e.g., Commonwealth v. Hargrave, 745 A.2d 20, 23 (Pa.Super.Ct.2000). “Nonetheless, this only holds true in cases in which the other evidence of guilt consists of more than mere presence at the scene.” Id. at 24. In the end, “ ‘mere presence on the scene both immediately prior to and subsequent to the commission of a crime and flight therefrom is not sufficient to prove involvement in the crime.’ ” Id. at 23-24 (quoting Commonwealth v. Goodman, 465 Pa. 367, 350 A.2d 810, 811-12 (1976)).
The majority itself acknowledges that “this is a close case” under Jackson, going so far as to state that, “had we been the Superior Court, we might even have reversed his conviction.” (Majority Opinion at 853.) Ultimately, Eley’s conviction for conspiracy to commit robbery, robbery, and second-degree murder was based on nothing more than his presence at the scene of the crimes and his flight from the scene. Applying the well-established legal principles summarized above, I conclude that his conviction cannot be allowed to stand. In short, it was objectively unreasonable for the Pennsylvania Superior Court to decide that a rational jury could have found Eley guilty of second-degree murder, robbery, and conspiracy to commit robbery beyond a reasonable doubt. This ease thereby presents us with the kind of “extreme malfnnction[ ] in the state criminal justice system[ ]” that federal ha-beas relief under AEDPA is actually meant to remedy. Harrington, 131 S.Ct. at 786 (quoting Jackson, 443 U.S. at 332 n. 5, 99 S.Ct. 2781 (Stevens, J., concurring in judgment)).
Focusing in particular on the conspiracy charge, the majority summarizes the evidence presented to the jury in some detail and also identifies a rather extensive range of inferences that a rational jury allegedly could have drawn from this evidence. I observe that, in contrast, the Pennsylvania Superior Court’s own discussion of Eley’s sufficiency of the evidence claim was rather cursory. For example, it stated, without any explanation, that “they [Eley and his two co-Defendants] were seen acting together when the victim was shot.” (A261.) In any case, I must reject the majority’s own approach because it would have been clearly unreasonable for a jury to draw many of these proffered inferences given the evidence that was presented at trial.
For instance, the majority concluded that “a jury could have rationally inferred that Eley intended and agreed to rob De- *864 Jesus with his co-defendants” because, in turn, a rational jury could have inferred that: (1) Eley was prepared to prevent DeJesus from fleeing based on the testimony that two men waited right beside the taxi while one man entered and two shots were fired; (2) he was ready to help in hiding the murder weapon based on the testimony that he fled with his co-Defendants towards an abandoned house where multiple weapons were found; and (3) he was attempting to hide his guilt given his false statement to the police. (Majority Opinion at 850.) Nevertheless, I observe that none of the witnesses actually testified that the other two men attempted to block the victim’s escape, acted as a lookout, or did anything else to aid or support the shooter. As the majority itself notes, a mere five seconds elapsed between the second and third shots. It also acknowledges “that Eley and his co-defendants were loitering in the area of Hummel and Kittatinny” and “that they regularly hung out there.” (Id. at 25.) Furthermore, McDonald testified that she did not see any weapons, and Fonseca similarly told the jury that he did not see the men carrying anything while they were running away. There was no evidence that Eley benefited from the robbery itself (e.g., possession of the money stolen from DeJe-sus) or that there were any earlier encounters with, or threats against, DeJesus himself. The police officers likewise did not find any of the eo-Defendants’ fingerprints on the abandoned house’s doorknobs or the weapons they recovered and, more broadly, did not uncover anything else (e.g., any identification or pictures) connecting Eley with this building. I further note that Eley’s police statement, like his flight from the scene, at best indicated consciousness of guilt. Given the absence of any real evidence indicating that he intended and agreed to engage in criminal activity — or at least intended to aid or promote such activity and then actively participated in the activity itself — this statement was clearly not sufficient to sustain his conviction.
The Supreme Court’s recent Coleman opinion further highlights the objective unreasonableness of the Pennsylvania Superior Court’s decision. The majority itself acknowledges that “the evidence is less compelling in this case than in Coleman.” (Id. at 23.) In fact, the Coleman Court observed that the prisoner and his co-defendant — who “ ‘ran the streets together’ ” — attempted to collect a debt from the victim earlier on the day of the murder, the victim resisted and humiliated the co-defendant in public by beating him with a broomstick, and the enraged co-defendant repeatedly declared his intent to kill the victim in the prisoner’s presence. Coleman, 132 S.Ct. at 2065. The prisoner then helped the co-defendant, who was noticeably concealing a bulky object under his trenchcoat, to escort the victim into the alley. Id. While the prisoner stood at the entryway, the co-defendant pulled out a shotgun and shot the victim in the chest. Id. As I have already observed, one of the witnesses at Eley’s trial actually testified that she did not see any weapons. There also was an absence of any evidence of either any prior encounters with — or threats against — DeJesus or that the two men by the taxi acted to block his escape or otherwise assist the shooter. Given the circumstances, the Pennsylvania Superior Court’s decision clearly constituted an objectively unreasonable application of Jackson.
For the foregoing reasons, I would vacate the District Court’s denial of Eley’s sufficiency of the evidence claim and direct the District Court to order his unconditional release from custody with prejudice to any re-prosecution. See, e.g., O’Laughlin v. O’Brien, 568 F.3d 287, 309 (1st Cir. *865 2009) (“Because double jeopardy principles apply here, we remand to the district court to order O’Laughlin’s unconditional release with prejudice to reprosecution.” (citing Burks v. United States, 437 U.S. 1, 18, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978))). I therefore cannot join the majority’s discussion of the Confrontation Clause claim or its judgment remanding this case for a possible retrial.